IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AULT INTERNATIONAL MEDICAL MANAGEMENT, LLC, : : Plaintiff, : : v. : : CITY OF SEVIERVILLE, : : Defendant. : | Case No. 2:19-cv-02739 JUDGE ALGENON L. MARBLEY Magistrate Judge Jolson |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant City of Sevierville's Motion to Dismiss for Lack of Personal Jurisdiction. Doc. 3. For the reasons set forth below, the Court **DENIES** the Motion [#3].

**II. BACKGROUND**

Plaintiff Ault International Medical Management, LLC is an Ohio limited liability company that provides a variety of medical case management services for health plans throughout the United States. Doc. 2 at 1-2. Defendant City of Sevierville is a municipality incorporated in the state of Tennessee that sponsors a health plan for its employees. *Id.* at 2. On March 1, 2018, after several weeks of negotiations, Plaintiff and Defendant entered into a Case Management Agreement ("CMA"), whereby Plaintiff was to perform case management services on behalf of Defendant's employee health plan for a period of three years. *Id.*

On February 13, 2019, Defendant sent Plaintiff a letter terminating the CMA effective February 28, 2019. *Id.* Defendant terminated the CMA despite there being twenty-six months

1

remaining on the initial contract. *Id.* Plaintiff thus filed this lawsuit alleging a breach of contract. Defendant has now moved to dismiss Plaintiff's Complaint for a lack of personal jurisdiction.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint where the Court lacks personal jurisdiction over a defendant to the action. "Plaintiff bears the burden of establishing that personal jurisdiction over a defendant exists." *Ruhl v. Brown*, 2014 WL 3870660, at *2 (S.D. Ohio Aug. 7, 2014). Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Id.* (internal quotations omitted). Plaintiff can make this showing by "establishing with reasonable particularity sufficient contacts between [Defendant] and the forum state to support jurisdiction." *Id.*

## IV. ANALYSIS

Defendant has moved for the dismissal of Plaintiff's Complaint, arguing that the Court lacks personal jurisdiction over them because they do not transact any business or maintain minimum contacts in the state of Ohio. Alternatively, Defendant asks the Court to transfer this case to the Eastern District of Tennessee, citing it as the more convenient forum for litigation.

### A. Whether the Court has Personal Jurisdiction over Defendant

When dealing with a diversity jurisdiction case, such as this, the Court looks to "the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). "The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Id.*

2

Ohio's long-arm statute allows courts to exercise personal jurisdiction over out-of-state defendants in nine situations. *See* O.R.C. § 2307.382(a).[1] Relevant here, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in [Ohio]." O.R.C. § 2307.382(a)(1). To "transact" business means "to prosecute negotiations; to carry on business; [or] to have dealings." *Retail Serv. Sys., Inc. v. Mattress by Appointment, LLC*, 210 F. Supp. 3d 916, 924 (S.D. Ohio 2016) (quoting *Ky. Oaks Mall Co. v. Mitchell's Formal wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (1990)). "[W]here a nonresident 'initiates, negotiates a contract, and through a course of

---

[1] A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8) Having an interest in, using, or possessing real property in this state; and

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

3

dealing becomes obligated to make payments to an Ohio corporation,' that nonresident [is] 'transacting any business in [Ohio]' for purposes of the long-arm statute." *Kendle v. Whig Enterprises, LLC*, 2016 WL 5661680, at *5 (S.D. Ohio Sept. 30, 2016).

If the Court determines that the Ohio long-arm statute conveys jurisdiction over an out-of-state defendant, the next question is whether exercising personal jurisdiction over that defendant "comports with constitutional due process requirements." *Retail Serv. Sys.*, 210 F. Supp. 3d at 927. The Sixth Circuit has constructed a three-part test to guide the Court's analysis:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon*, 228 F.3d at 721. The purposeful availment prong "is essential to a finding of personal jurisdiction." *Id.* "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between itself and residents of the forum, it manifestly has availed itself of the privilege of conducting business there." *Retail Serv. Sys.*, 210 F. Supp. 3d at 928 (internal quotations omitted).

Here, Plaintiff has made a prima facie showing that Defendant transacted business in the state of Ohio. Over the course of several weeks, Defendant initiated and engaged in negotiations with Plaintiff regarding the terms and conditions of the CMA in an effort to obtain Plaintiff's services. Defendant was aware that Plaintiff resided in Columbus, Ohio. And, Defendant created an ongoing obligation to Plaintiff when it executed the CMA, as the agreement, according to Plaintiff, provided for an initial three-year term, followed by automatic renewals for two successive two-year terms. *See Franklin Prods., Inc. v. Gen. Nutrition Corp.*, 2007 WL 2462665, at *4 (S.D. Ohio Aug. 27, 2007) ("[W]here a nonresident initiates, negotiates a contract, and

4

through a course of dealing becomes obligated to make such payments to an Ohio corporation, that nonresident was transacting business in [Ohio] for purposes of the long-arm statute.").

For these same reasons, Defendant has purposefully availed itself of the privilege of conducting business in the forum state. *See Research Inst. at Nationwide Children's hosp. v. Trellis Bioscience, LLC*, 2016 WL 5791194, at *8 (S.D. Ohio Sept. 30, 2016) ("The Ohio long-arm statute's transacting any business standard is coextensive with the purposeful availment prong of constitutional analysis.") (internal quotations and citation omitted). Indeed, Defendant entered into a contractual agreement with Plaintiff, whereby it sought out and benefited from the services of an Ohio resident. *See Kendle*, 2016 WL 5661680, at *7 ("[I]f, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.") (quoting *Cole v. Mileti*, 122 F.3d 433, 436 (6th Cir. 1998)). Certainly, Defendant could have foreseen that its business dealings with Plaintiff would have potential consequences in the state of Ohio. *PTG Logistics, LLC v. Bickel's Snack Foods, Inc.*, 196 F. Supp. 2d 593, 600-01 (S.D. Ohio 2002) ("Because BSF knew that it was creating a continuing obligation in Ohio and could have foreseen that its relationship with PTG could have consequences in Ohio, BSF purposefully availed itself of the privilege of acting in the state of Ohio[.]").

Notwithstanding the above, Defendant argues that the existence of a contract between it and Plaintiff does not, in and of itself, mean it purposefully availed itself of the benefits and protections of Ohio law. Defendant relies primarily on *Calphalon Corporation v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), and *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997), for support. While Defendant's statement of the law is correct, both of those cases are readily distinguishable. In each, the Sixth Circuit suggested that a key inquiry in the purposeful

availment analysis is whether the defendant intends to establish continuing relationships and obligations in the forum state. That fact was noticeably absent in *Calaphon* and *Kerry Steel*. *See* 228 F.3d at 722 ("In examining the *quality* of the parties' relationship, we find that the actual course of dealings between the parties demonstrates that Rowlette's contacts with Ohio were purely 'fortuitous' and 'attenuated.'"); 106 F.3d at 151 ("[W]e have been given no reason to believe that Paragon intended to establish continuing relationships and obligations in Michigan. . . . The purchase agreement between Paragon and Kerry Steel represents nothing more than an isolated transaction, as far as the record discloses."). But here, Defendant deliberately created a long-term relationship with an Ohio company after engaging in extensive negotiations.

Defendant's reliance on *International Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386 (6th Cir. 1997) and *Nationwide Mutual Insurance Company v. Tryg International Insurance Company, Limited*, 91 F.3d 790 (6th Cir. 1996) is also misplaced. Defendant argues that these cases stand for the proposition that a purchaser of services does not necessarily avail itself of the privilege of conducting business in the forum state. Although these cases lend some support to Defendant's position, the Sixth Circuit made clear that it was less deferential in its analysis because the defendants were foreign companies. 107 F.3d at 396 ("We have attempted to give the particular facts of this case appropriately close scrutiny, bearing in mind the responsibility we have as an American court to exercise great care and 'reserve' when it comes to extending our notions of personal jurisdiction into the international field."); 91 F.3d at 797 ("Special concerns arise when a plaintiff attempts to bring a foreign defendant within our national borders[.]"). Here, however, Defendant resides just a few hours south of the forum state. The deferential approach applied in *Euroglas* and *Tryg* is, therefore, not wholly applicable. *Cf. WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720, 726-27 (N.D. Ill. 2014) ("Although in this circumstance WIFN

was seeking to purchase services rather than to provide them, the fact remains that WIFN targeted a company in Illinois for business purposes.").

Turning to the final two steps of the due process analysis, both weigh in favor of finding personal jurisdiction over Defendant. *See Calphalon*, 228 F.3d at 721 ("Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."). Undoubtedly, this breach of contract action arises from Defendant's agreement with an Ohio company. Exercising jurisdiction over Defendant is thus reasonable based on its business in the forum state. *See Kendle*, 2016 WL 5661680, at *8 ("[W]here the first two criteria are satisfied, only the unusual case will not meet this third criterion."). Indeed, any burden that litigating this case in Ohio would pose on Defendant is outweighed by Ohio's interest in business being conducted fairly and legally within its borders and Plaintiff's interest in pursuing relief for its alleged damages in the forum state. *See id.* ("In determining reasonableness, the Court must balance three factors: the burden on the defendant, the interests of the forum [s]tate, and the plaintiff's interest in obtaining relief."). Accordingly, the Court **DENIES** Defendant's Motion to Dismiss.

### B. Whether the Eastern District of Tennessee is the more Convenient Forum

Alternatively, Defendant asks the Court to transfer this case to the Eastern District of Tennessee, citing it as the more convenient forum for litigation.

The standard for transfer of venue to a more convenient forum is found in 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented.

7

The moving party bears the burden of establishing the need for a transfer of venue. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002). In weighing this decision, "[c]ourts are to consider both the private interests of the litigants and the public's interest in the administration of justice." *Id.* The private interests of the litigants include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of unwilling witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* Public interests, on the other hand, include: "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Id.*

Here, the Court finds that the balance of interests lies with keeping this case in the Southern District of Ohio. Though Defendant contends that transferring this case to the Eastern District of Tennessee would reduce its cost of travel, eliminate its need to retain Ohio counsel, provide easier access to its records, and ensure unwilling witnesses would fall within the court's subpoena power,[2] these same concerns would apply to Plaintiff if the case were to be transferred from Ohio. Indeed, Plaintiff and all its documents are in Franklin County, Ohio, and Plaintiff's witnesses -- seven of whom are no longer employees of the company -- all reside in the Columbus, Ohio area.

Similarly, the public interest does not warrant a transfer. Defendant argues that Tennessee has a more substantial interest in the outcome of this case because Defendant is a municipality organized under the laws of that state. But Ohio has an equally strong interest in enforcing contracts entered into by its domestic entities. Because transferring this case would merely shift

---

[2] Defendant notes that a majority of its witnesses reside in or around Sevier and Knox County, Tennessee, the closest of which is approximately 280 miles from Columbus, Ohio. *See* Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]"

the inconvenience from one party to the other, the Court will retain jurisdiction over the matter. *See Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("28 U.S.C. § 1404 does not allow for transfer to a forum that is equally convenient or inconvenient, nor does it allow for transfer if that transfer would only shift the inconvenience from one party to another.").

## V. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's Motion to Dismiss [#3].

**IT IS SO ORDERED.**

                                         **/s/ Algenon L. Marbley_____**
                                         **ALGENON L. MARBLEY**
                                         **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 16, 2020**